UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

 KAREN A. FROST,

                                                                    **DECISION AND ORDER**

                                        Plaintiff,                         1:19-CV-0422(JJM)

v.

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

                This is an action brought pursuant to 42 U.S.C. §405(g) to review the final

determination of defendant Andrew M. Saul, the Commissioner of Social Security, that plaintiff

was not entitled to Disability Insurance Benefits ("DIB").  Before the court are the parties' cross-

motions for judgment on the pleadings [6, 10].[1]  The parties have consented to my jurisdiction

[12].  Having reviewed the parties' submissions [6, 10, 11], the action is remanded for further

proceedings.


                                            **BACKGROUND**

                The parties' familiarity with the 808-page administrative record is presumed.  In

September 2015, plaintiff, who was 42 years old, filed an application for DIB alleging a

disability onset date of March 12, 2015, due to, *inter alia*, "uncontrolled anxiety/depression 2005

- panic attacks".  Administrative transcript [4], pp. 153, 171.[2]  Plaintiff commenced employment

_____

[1]         Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page
references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2]         Plaintiff also alleged physical impairments, which are not relevant to the issues raised in this
action.

in 1992 as a Licensed Practical Nurse, then as a Registered Nurse, until most recently as a Director of Clinical Services, before ceasing employment in March 2015. Id., pp. 172, 193-202.

Plaintiff had a history of mental health treatment, which appears to have been exacerbated in early 2015, following her divorce.  In March 2015, plaintiff was seen by Anh Bui, M.D., of Unity Family Medicine, for complaints of anxiety and depression.  She was restarted on Zoloft and directed to take Xanax as needed for severe anxiety. Id., pp. 269-71.  By April 2015, Dr. Bui switched plaintiff to citalopram and valium. Id., p. 274. At that time, she reported that she was still seeing a therapist regularly. Id., p. 276.

In May 2015, Paula Callahan, LCSW, wrote letters in connection with plaintiff's divorce and other legal issues, indicating that she had been treating plaintiff since 2011, and that she "is currently under so much emotional, financial and legal stress that she has gone from experiencing an Adjustment Disorder, which is what you would expect from one going through a divorce, to now having symptoms of a Major Depression and a Panic Disorder". Id., pp. 638, 643.  In September 2015, plaintiff was assessed with "extreme" depression using the Beck depression test, and a screening test measured her anxiety as "severe". Id., pp. 652-55.

In November 2015, Janine Ippolito, Psy.D. conducted a consultative psychiatric evaluation. Id., pp. 289-93.  Dr. Ippolito opined that plaintiff:

> "presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions with no evidence of limitation.  She can maintain attention and concentration with mild limitations. She can relate adequately with others and appropriately deal with stress with moderate to marked limitations. These limitations are due to her current emotional distress."  Id., p. 292.

Dr. Ippolito went on to conclude that the results of her evaluation "appear to be consistent with psychiatric problems and this may significantly interfere with [her] ability to

function on a daily basis". Id.  She also recommended that plaintiff "continue with psychological treatment as currently provided.  Refer for psychiatric evaluation and medication management." Id., p. 292.

Also in November 2015, J. Ochoa, a state agency psychologist,[3] assessed plaintiff with a variety of moderate non-exertional limitations, but found that she was able to: "understand and remember instructions and work procedures";  "sustain adequate concentration to complete ordinary tasks independently on a sustained basis"; "engage in routine interactions to meet basic work needs"; and "cope with basis changes and make routine decisions".  Id., pp. 69-71.

From February 2016 until her discharge for non-compliance in January 2017, plaintiff treated with Michelle Atallah, LMSW. Id., pp. 680-727.  In April 2016, she also began treating with Pamela Khurana, M.D., who diagnosed her with post-traumatic stress disorder ("PTSD") and major depressive disorder.  At that time, Dr. Khurana noted that plaintiff "appears to have moderate-severe [symptoms]", and assessed her with a Global Assessment of Functioning ("GAF") score of 45. Id., pp. 704-08.[4] Plaintiff continued to treat with Dr. Khurana in July 2016. Id., pp. 696-98.

---

[3]        J. Ochoa's first name and credentials are not included in the record.  However, both parties appear to agree that he/she is a psychologist.

[4]        "Mental health professionals use [GAF] scores to rate an individual's level of psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness . . . . [Plaintiff's] GAF score of 45 indicates that she has 'serious symptoms' (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or 'serious impairment in social, occupational, or school functioning' (e.g., no friends, unable to keep a job)." Guttierez v. Berryhill, 333 F. Supp. 3d 267, 272 n. 7 (W.D.N.Y. 2018).

Throughout, plaintiff continued to treat with Dr. Bui for anxiety, depression, and other mental health conditions such as panic attacks, stress, and PTSD.  Dr. Bui continued to prescribe a variety of medications. Id., pp. 280-86, 584-86, 588-590, 592-94, 596-98.  In September 2016 Dr. Bui stated that plaintiff was "disabled as of March 11, 2015 and has not been able to return to work since . . . . Her most recent visit of August 10, 2016 indicates that she is totally and permanently disabled". Id., p. 601. Dr. Bui also completed a functional assessment form, indicating that plaintiff was "very limited" in maintaining attention and concentration, interacting appropriately with others, maintaining socially appropriate behavior, and functioning in work setting at a constant pace. Id., p. 603.

After plaintiff's claim was initially denied, an administrative hearing was held on March 22, 2018 before Administrative Law Judge ("ALJ") Rosanne Dummer, at which plaintiff, who was represented by an attorney, and a vocational expert testified. Id., pp. 34-59.  On April 18, 2018, ALJ Dummer issued a decision finding that plaintiff was not disabled. Id., pp. 10-25. In rendering that determination, she concluded that plaintiff's severe impairments were depression and anxiety, but that those impairments did not meet the criteria of listings 12.04 or 12.06. Id., pp. 12-13.  ALJ Dummer concluded that plaintiff had the RFC to perform medium work, and that:

> "[s]econdary to mental impairments, [she] could understand, remember, and carry out instructions for routine, repetitive tasks, commensurate with unskilled work.  She could sustain attention and concentration for at least two-hour segments of time in an eight-hour day.  [She] could tolerate brief and superficial work-oriented task-related contact with others; she could tolerate brief and superficial occasional public contact.  [She] could adapt to changes in the work place for routine, repetitive tasks.  She should not perform faced [*sic*] paced or high production work". Id., p. 14.

In formulating that RFC, ALJ Dummer gave "minimal weight" to Dr. Bui's September 2016 opinion, "limited weight" to Dr. Ippolito's November 2015 opinion that plaintiff has moderate to marked limitations relating adequately to others and appropriately dealing with stress,[5] and "some weight" to Dr. Ochoa's November 2015 opinion. Id., pp. 22-23.  Based on the RFC, ALJ Dummer concluded that plaintiff was unable to perform her past relevant work, but that there were significant jobs in the national economy that she was able to perform, and therefore was not disabled from March 12, 2015 though the date of her April 18, 2018 decision. Id., pp. 23-25.

The Appeals Council denied plaintiff's request for review on February 1, 2019. Id., pp. 1-3.  Thereafter, this action ensued.


## DISCUSSION

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520,

---

[5]     ALJ Dummer did not expressly assign any particular weight to the remainder of Dr. Ippolito's opinion.

416.920.  The plaintiff bears the burden with respect to steps one through four, while the

Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

       Here, plaintiff argues that ALJ Dummer improperly rejected Dr. Ippolito's

opinion and impermissibly relied on her lay opinion in formulating a "highly specific" RFC

unsupported by substantial evidence. Plaintiff's Memorandum of Law [6-1], Points I and II.   As

a result, plaintiff asks that the Commissioner's decision be vacated and remanded for a

calculation of benefits or further administrative proceedings.  Id., p. 20.


**B.**     **Did ALJ Dummer Err in Giving "Little Weight" to that Portion of the Consultative Examiner's Opinion that was Favorable to Plaintiff?**

       Dr. Ippolito's "opinion, which is based on a one-time consultative examination, is

not entitled to any special weight". Benman v. Commissioner of Social Security, 350 F. Supp. 3d

252, 258 (W.D.N.Y. 2018).  "Nonetheless, before discounting any medical opinion, including

those by consultative examiners, the ALJ must consider the following factors:

> (1) the frequency of examination and length, nature, and extent of the treatment relationship,
>
> (2) the evidence in support of the physician's opinion,
>
> (3) the consistency of the opinion with the record as a whole,
>
> (4) whether the opinion is from a specialist, and
>
> (5) whatever other factors tend to support or contradict the opinion." Id.

       In giving little weight to Dr. Ippolito's opinion that plaintiff had a moderate to

marked limitation relating adequately to others and dealing appropriately with stress, ALJ

Dummer explained that it was "based on [a] one-time evaluation";  "does not appear to be

indicated elsewhere in the record"; that plaintiff "was a full time nursing student, provided care

for her boyfriend's daughter, and drove a vehicle long distance to appointments, which

necessarily requires the abilities Dr. Ippolito found markedly limited"; "only recommended [she]

continue current treatment (i.e., counseling), obtain a psychiatric evaluation, and medication

management, which would not preclude working"; and the "[m]ental status examination . . . was

essentially normal with the exception of mild memory and attention/concentration problems".

Id., p. 22.

        Plaintiff argues that ALJ Dummer impermissibly cherry-picked Dr. Ippolito's

opinion, and that some of the reasons she gave for discounting Dr. Ippolito's opinion were not

supported by the record.  Plaintiff's Memorandum of Law [6-1], pp. 11-15.  I agree.

        In relying on plaintiff's activities to discount Dr. Ippolito's opinion, ALJ Dummer

ignored record evidence supportive of plaintiff's limitations. For example, ALJ Dummer cited

the fact that plaintiff was attending school to become a Nurse Practitioner, but ignored plaintiff's

testimony that she failed the last semester and was currently failing because of an inability to

focus and remember. [4], pp. 38, 49-50, 797.  Though ALJ Dummer also relied on plaintiff's

care of her boyfriend's child, it is not evident how old the child was or the level of care she

provided.  Without that information, it is unclear whether that activity was inconsistent with a

moderate to marked limitation for dealing with stress and relating adequately with others.

        Nor is it apparent whether she was performing this activity on a sustained basis,

consistent with the capacity to function in work setting. See Vasquez v. Barnhart, 2004 WL

725322, *11 (E.D.N.Y. 2004) ("[u]nder the law of the Second Circuit a finding that a claimant is

capable of undertaking basic activities of daily life cannot stand in for a determination of

whether that person is capable of maintaining employment, at least where there is no evidence

that the claimant 'engaged in any of these activities for sustained periods comparable to those

required to hold a sedentary job'"). *See also* <u>Pacheco v. Saul</u>, 2020 WL 113702, *6 (D. Conn. 2020) ("[f]or a person . . .  who suffers from depression, bipolar, panic and anxiety disorders, 'the work environment is completely different from home or a mental health clinic'").

Some of ALJ Dummer's logic for discounting Dr. Ippolito's opinion was also flawed. As plaintiff notes, it is not evident what a limitation in dealing with stress and adequately relating to others has to do with the capacity for driving long distances.  Plaintiff's Memorandum of Law [6-1], p. 12. Likewise, it is unclear why the fact that Dr. Ippolito's recommended additional treatment - a psychiatric evaluation and medication management - would not preclude working, was a basis for affording limited weight to Dr. Ippolito's opinion that plaintiff had moderate to marked limitations in relating adequately with others and appropriately dealing with stress. Whether the symptoms from the underlying impairments preclude work, rather than the treatment for the impairment, is determinative.  Moreover, ALJ Dummer's explanation that Dr. Ippolito's opinion was based on a one-time evaluation applies equally to the entirety of the opinion, not just those portions that he afforded limited weight.

"While the ALJ is solely responsible for weighing the evidence in the record and resolving any conflicts, mischaracterizing . . .  evidence of a claimant's alleged disability . . . does not satisfy a substantial evidence standard." <u>Serrano v. Colvin</u>, 2018 WL 991792, *4 (W.D.N.Y. 2018).  The same holds true for flawed reasoning. *See* <u>Donahue v. Shalala</u>, 851 F. Supp. 27, 33 (D. Conn. 1994) ("the ALJ's assessment of the medical evidence was internally inconsistent, illogical, and, hence, not based on substantial evidence").  Based on ALJ Dummer's mischaracterization of the record and flawed reasoning, I conclude that her decision to give little weight to Dr. Ippolito's opinion that plaintiff had moderate to marked limitations is not supported by substantial evidence.

The Commissioner characterizes any error in weighing Dr. Ippolito's as harmless because "[t]he ALJ accounted for any limitations regarding social interaction and dealing with stress by finding that she can tolerate brief and superficial work-oriented task-related contact with others and . . . with the public, adapt to changes for routine, repetitive tasks, and not perform faced paced or high production work". Commissioner's Brief [10-1], p. 17.  I disagree. As plaintiff notes (plaintiff's Memorandum of Law [6-1], p. 13), since "stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called 'low-stress' jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his [or her] ability to work". Collins v. Colvin, 2016 WL 5529424, *3 (W.D.N.Y. 2016). While "[a]n ALJ is required to specifically inquire into and analyze a claimant's ability to manage stress" (id.), that was not done here.

The Commissioner further argues that any error in weighing Dr. Ippolito's opinion was harmless because ALJ Dummer "gave Dr. Ochoa's opinion 'some weight' . . . and Dr. Ochoa's opinion generally supports the ALJ's RFC assessment".  Commissioner's Brief [10-1], p. 17. That argument is unpersuasive, since it is not clear that the current RFC will align with the weight ultimately afforded to Dr. Ippolito's opinion when it is properly weighed.  Moreover, "it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient". Ransome v. Colvin, 164 F. Supp. 3d 427, 431 (W.D.N.Y. 2016). That is especially so here, where the ALJ appears to have rejected the favorable medical opinions of plaintiff's treating physician and consultative examiner, both of whom opined that plaintiff

had significant limitations in interacting appropriately with others, in favor of the state agency review physician's opinion.

In any event, for the reasons discussed below, I conclude that even if ALJ Dummer had properly weighed Dr. Ippolito's opinion (or any error in weighing that opinion was harmless), the RFC was based on her lay judgment.


C.      **Did ALJ Dummer, as a Layperson, Improperly Formulate the RFC?**

An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (Summary Order).  However, in the absence of a competent medical opinion, an ALJ is generally "not qualified to assess a claimant's RFC on the basis of bare medical findings . . . . Thus, even though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself". Perkins v. Berryhill, 2018 WL 3372964, *3 (W.D.N.Y. 2018). *See also* Goble v. Colvin, 2016 WL 3179901, *6 (W.D.N.Y. 2016) ("the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence"); Wilson v. Colvin, 2015 WL 1003933, *21 (W.D.N.Y. 2015) ("[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence"); Guttierez v. Berryhill, 2018 WL 3802015, *3 (W.D.N.Y. 2018); Dye v. Commissioner of Social Security, 351 F. Supp. 3d 386, 390–91 (W.D.N.Y. 2019) ("an ALJ is not a medical professional, and is not qualified to

assess a claimant's RFC on the basis of bare medical findings . . . . As a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence").

It is only "when the medical evidence shows only minor physical impairments, [that] an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment". Perkins, 2018 WL 3372694, *3. Nonetheless, courts remain "wary of permitting an ALJ to use common sense to assess mental limitations, which are by their nature highly complex and individualized." Stoeckel v. Commissioner of Social Security, 2019 WL 5445518, *2 (W.D.N.Y.  2019).

The Commissioner argues that the absence of a medical opinion directly supporting the RFC does not warrant remand. Commissioner's Brief [10-1], pp. 18-21.  He notes that ALJ Dummer formulated the RFC by "specify[ing] which parts of [Dr. Ippolito's] opinion[ ] she gave only 'limited weight'", and "also considered the opinion of Dr. Ochoa, and assigned it 'some weight'".  Id., p. 20.

"While it is true that the RFC does not need to correspond exactly to an opinion, it does require that an opinion be given enough weight to rely on it for the determination of the RFC."  Waldock v. Saul, 2020 WL 1080412, *3 (W.D.N.Y. 2020). *See also* Marshall v. Berryhill, 2018 WL 6257430, *2 (W.D.N.Y. 2018) ("[i]n reaching that conclusion [the RFC], the A.L.J. essentially rejected, or at least gave little weight to, the opinions of Plaintiff's treating medical sources . . . . By failing to give controlling, or even substantial, weight to any of the treating physicians, the A.L.J.'s RFC determination is not based on a medical opinion. An RFC determination made without the benefit of a medical opinion is insufficient to support the finding with substantial evidence").  By giving no more than "some weight" to the opinion of Dr. Ochoa,

the non-examining review psychologist, and otherwise affording "limited" and "minimal" weight to the remaining medical opinions, that did not occur here.

Even though ALJ Dummer rejected all favorable medical opinions from Drs. Bui and Ippolito, it is evident from the RFC that ALJ Dummer still believed that plaintiff had non-exertional limitations by, *inter alia*,  limiting her to "brief and superficial" contact with others and precluding her from performing fast paced or high production work. However, "the effect a mental impairment has on one's ability to work is not the sort of inquiry susceptible to lay evaluation." Stoeckel, 2019 WL 5445518, *3. As discussed above, vaguely affording "some weight" to Dr. Ochoa's opinion, a non-examining/treating psychologist, cannot fill that gap. *See* Ransome, 164 F. Supp. 3d at 431. Thus, without more of an explanation, it is not evident what record evidence ALJ Dummer, as a lay person, relied upon in formulating those portions of the RFC.

The Commissioner's reliance on Monroe v. Colvin, 676 Fed. App'x 5 (2d Cir. 2017) (Summary Order), does not compel a different conclusion.  There, the ALJ rejected the treating physician's medical assessment, but relied on the physician's treatment notes in determining the plaintiff's RFC. Commissioner Brief [10-1], p. 18.  The Second Circuit held that this was proper because "[n]ot only d[id] the [treating physician's] notes include descriptions of [plaintiff's] symptoms, but they also provide contemporaneous medical assessments of [plaintiff's] mood, energy, affect, and other characteristics relevant to her ability to perform sustained gainful activity. The ALJ also considered [the treating physician's] well-documented notes relating to [plaintiff's] social activities relevant to her functional capacity". Id. at 8.

In short, Monroe recognized that in the absence of reliance upon a medical opinion, "the RFC assessment will be sufficient only when the record is 'clear' and contains

'some useful assessment of the claimant's limitations from a medical source.'" <u>Muhammad v. Colvin</u>, 2017 WL 4837583, *4 (W.D.N.Y. 2017). *See* <u>Benman v. Commissioner of Social Security</u>, 350 F. Supp. 3d 252, 259-60 (W.D.N.Y. 2018) (where the ALJ did not rely on any treating source opinion evidence in determining the plaintiff's RFC, "the issue is whether the record is clear, and contains some useful assessment of the claimant's limitations from a medical source sufficient to support the RFC finding"); <u>Murray v. Commissioner of Social Security</u>, 2019 WL 4263336, *3 (W.D.N.Y. 2019); <u>Johnson v. Commissioner of Social Security</u>, 351 F. Supp. 3d 286, 294 (W.D.N.Y. 2018).  Here, however, it is not evident where in the treatment records there was a useful assessment of claimant's limitation that would permit ALJ Dummer to craft those portions of the RFC addressing plaintiff's non-exertional limitations.  Therefore, on remand, this shall also be addressed.

**D.      Should this Case be Remanded for a Calculation of Benefits?**

Plaintiff requests that this case be "reversed or in the alternative, remanded for further administrative proceedings". Plaintiff's Memorandum of Law [6-1], p. 1.  Where "no useful purpose would be served . . . by a remand", a court may remand for a calculation of benefits. <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir. 1980).  Hence, "[r]eversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability, and a remand for further evidentiary proceedings would serve no useful purpose".  <u>Harry L. v. Commissioner of Social Security</u>, 2019 WL 3937224, *5 (N.D.N.Y. 2019), <u>adopted</u>, 2019 WL 3934952 (N.D.N.Y. 2019).

"Though a district court has discretion to do so, remanding solely for the calculation of benefits is considered an 'extraordinary action'". <u>Catsigiannis v. Astrue</u>, 2013 WL

2445046, *5 (E.D.N.Y. 2013). *See* <u>Simpson v. Saul</u>, 2019 WL 4183912, *8 (W.D.N.Y. 2019) (denying request for a remand for a calculation of benefits where it was the third action seeking judicial review of the Commissioner's denial of coverage, but the record was not so obvious as to call for finding of disability).

   While the record does contain proof of disability, that proof is not conclusive. Therefore, I find that remanding this case for a proper weighing of the medical evidence and explanation for how the RFC is tethered to the medical evidence would serve a useful purpose.

## CONCLUSION

   For these reasons, plaintiff's motion for judgment on the pleadings [6] is granted to the extent that this case is remanded to the Commissioner for further proceedings consistent with this Decision and Order, but is otherwise denied, and the Commissioner's motion [10] is denied.

**SO ORDERED**.

Dated: July 28, 2020

       /s/Jeremiah J. McCarthy
       JEREMIAH J. MCCARTHY
       United States Magistrate Judge